IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge N. Reid Neureiter

Civil Action No. 19-cv-00974-NRN

JANAMJOT SINGH SODHI,

Applicant,

v.

JOHNNY CHOATE, Warden,

Respondent.

---

ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before this Court pursuant to the Order of Reference entered May 20, 2019, and the parties' unanimous consent to disposition of this action by a United States Magistrate Judge.

Applicant is being detained at an immigration detention center in Aurora, Colorado.   On April 22, 2019, Applicant filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 8) ("Application").   On May 7, 2019, Respondent was ordered to show cause why the Application should not be granted. On May 29, 2019, Respondent filed Respondent's Corrected Response to Order to Show Cause (ECF No. 24).   On June 24, 2019, Applicant filed "Petitioner's Traverse to Respondent's Reply" (ECF No. 25) ("Traverse").   On June 26, 2019, the Court held a hearing on the Application.

The Court must construe the Application and other papers filed by Applicant liberally because he is not represented by an attorney.   *See Haines v. Kerner*, 404 U.S.

519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

However, the Court should not be an advocate for a *pro se* litigant.   *See Hall*, 935 F.2d

at 1110.   After reviewing the record in this case, the Court FINDS and CONCLUDES

that the Application should be denied, and the case dismissed.

## BACKGROUND

Applicant, Janamjot[1] Singh Sodhi, is a native and citizen of India.   In February

2010 Applicant was granted lawful permanent resident status in the United States.   In

June 2013 Applicant was convicted of mail and wire fraud in the United States District

Court for the Eastern District of California and he was sentenced to prison for fifty-seven

months.   *See United States v. Sodhi*, No. 11-cr-00332-LJO (E.D. Cal. June 27, 2013).

Applicant also was ordered to pay restitution in the amount of $2,386,000.00.   *See id.*

On March 10, 2017, after being released from prison, immigration officials detained

Applicant and commenced removal proceedings.

On March 27, 2017, Applicant appeared in immigration court and requested a

continuance to obtain counsel, which was granted to April 12, 2017.   (ECF No. 24-1

(Declaration of Nicholas Mastley) at p.2.)   On April 12, 2017, Applicant appeared in

immigration court and requested a second continuance to obtain counsel, which was

granted to April 26, 2017.   (*Id.*)   On April 26, 2017, Applicant appeared with counsel

and requested a continuance to respond to the allegations of removability, which was

granted to May 10, 2017.   (*Id.*)   On May 10, 2017, Applicant appeared with counsel

[1] Applicant's first name is spelled "Janamjet" in Immigration and Customs Enforcement records submitted by Respondent.

2

and requested another continuance to present his application for relief, which was granted to August 29, 2017.   (*Id.* at p.3.)   On August 29, 2017, Applicant appeared with counsel and requested another continuance, which was granted over opposition to September 27, 2017.   (*Id.*)

On September 18, 2017, an immigration judge held a bond hearing and denied Applicant's request for release on bond.   (*Id.* & Attach. 3.)   Applicant appealed the bond determination and, on January 31, 2018, the Board of Immigration Appeals ("BIA") denied the appeal.   (*Id.* at p.4 & Attach. 2.)

On September 27, 2017, Applicant appeared in immigration court with new counsel and requested a continuance, which was granted to November 15, 2017.   (*Id.* at p.3.)   On November 15, 2017, Applicant appeared with counsel and an immigration judge granted a joint request for a continuance until December 5, 2017, to consider a potential conflict of interest with a witness.   (*Id.*)   On December 5, 2017, Applicant appeared with counsel and requested a continuance, which was granted to December 12, 2017.   (*Id.*)   On December 12, 2017, Applicant appeared with counsel and requested a continuance to present his application for relief, which was granted to April 4, 2018.   (*Id.* at pp.3-4.)

On April 4, 2018, Applicant appeared with counsel and presented his application for relief at a removal hearing.   (*Id.* at p.4.)   On May 22, 2018, the immigration judge entered an order of removal and Applicant appealed to the BIA.   (*Id.* & Attach. 4.)   On June 22, 2018, Applicant was transferred to the Aurora detention facility.   (*Id.*)   On August 9, 2018, the BIA granted Applicant's request for an extension of time to file an

appeal brief.   (*Id.* & Attach. 5.)   On August 29, 2018, a second request for extension of time was denied.   (*Id.* & Attach. 6.)   On November 13, 2018, the BIA denied Applicant's appeal.   (*Id.* at Attach. 4.)

On December 12, 2018, Applicant filed in the United States Court of Appeals for the Ninth Circuit a Petition for Review from the BIA's decision and a Motion for Stay of Removal.   (*Id.*)   On June 27, 2019, the Ninth Circuit entered an Order granting the Motion for Stay of Removal and appointing pro bono counsel to represent Applicant for the purpose of his Petition for Review.   (*See* ECF No. 27.)   The Petition for Review remains pending.

On February 8, 2019, immigration officials issued a Decision to Continue Detention, informing Applicant "that your custody status has been reviewed and it has been determined that you will not be released from the custody of [ICE] at this time" because "[t]here is a significant likelihood of removal in the reasonably foreseeable future."   (ECF No. 25 at p.45.)

Applicant initiated this habeas corpus action in the United States District Court for the Eastern District of California.   On April 1, 2019, the Eastern District of California entered an order transferring the action to the District of Colorado because Applicant is being held at a detention center in Colorado.   Applicant was ordered to file an amended pleading on the proper form and, on April 22, 2019, the Application was filed.   Attached to the Application is a "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241" (ECF No. 8-1) that appears to be a copy of the original pleading filed in the Eastern District of California.

**DISCUSSION**

Applicant's claims in this action and the relief he seeks have varied over time.   In the Application, Applicant claims the immigration judge and the BIA failed to inform him of his eligibility to seek a waiver of inadmissibility in the removal proceedings; counsel in his criminal case was ineffective by failing to advise him of the immigration consequences of his guilty plea; and counsel in the removal proceedings somehow was ineffective.   (*See* ECF No. 8 at pp.2-3.)   As relief Applicant requests an individualized bond hearing before a neutral decision-maker, waiver of inadmissibility, and termination of the removal proceedings because the Notice to Appear was defective.   (*See* ECF No. 8 at p.5.)

In the pleading attached to the Application, Applicant asserts additional claims that his prolonged detention without a custody redetermination hearing violates his rights under the Due Process Clause of the Fifth Amendment and the Excessive Bail Clause of the Eighth Amendment.   (*See* ECF No. 8-1 at pp.18-19.)   As relief Applicant asks either to be released with appropriate conditions of supervision, if necessary, or an order directing immigration officials to schedule a custody redetermination hearing, and he seeks an order terminating the removal proceedings because the Notice to Appear was defective.   (*See* ECF No. 8-1 at pp.19-20.)

Finally, in the Traverse, Applicant identifies his claims in this action as the following: (1) a Fifth and Sixth Amendment Claim that counsel in his criminal case was ineffective by failing to advise Applicant of the immigration consequences of his guilty plea (ECF No. 25 at pp.15-17); (2) a due process claim challenging Applicant's

September 2017 bond hearing because the immigration judge was not a neutral decision-maker, Applicant did not receive an individualized assessment, and there was no clear and convincing evidence to support the denial of bond (ECF No. 25 at pp.17-21); (3) a statutory claim contending he is entitled to a custody redetermination hearing because he is being held pursuant to 8 U.S.C. § 1226(a) rather than 8 U.S.C. § 1226(c) (ECF No. 25 at pp.21-24); (4) a due process claim challenging the February 8, 2019 Decision to Continue Detention (ECF No. 25 at pp.24-28); and (5) a due process claim challenging his prolonged detention without a custody redetermination hearing (ECF No. 25 at pp.28-36).   As relief Applicant seeks either release under appropriate conditions of supervision or an order directing immigration officials to schedule a custody redetermination hearing.   (*See* ECF No. 25 at pp.37-38.)

Because Applicant is proceeding *pro se*, the Court will address all of the claims he asserts in the various filings.

## I.    Claim Challenging Criminal Conviction

The Court first will address Applicant's claim that counsel in his criminal case was ineffective.   According to Applicant, "counsel in his criminal case failed to advise the Petitioner about the consequences of his plea agreement as related to his immigration status."   (ECF No. 25 at pp.15-16.)   He also alleges that he "placed 'particular emphasis' on the immigration consequences of a Plea in deciding whether or not to accept his plea agreement, but his criminal counsel failed him considerably [sic] to advise him of his immigration consequences."   (ECF No. 8 at p.3.)

The Court lacks jurisdiction to consider Applicant's claim challenging the validity

of his criminal conviction.   "The exclusive remedy for testing the validity of a judgment

and sentence, unless it is inadequate or ineffective, is that provided for in 28 U.S.C. §

2255."   *Johnson v. Taylor*, 347 F.2d 365, 366 (10th Cir. 1965); *see* 28 U.S.C. §

2255(e).   A § 2255 motion "must be filed in the district that imposed the sentence."

*Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996).

Applicant fails to demonstrate or even argue that the remedy available to him

under § 2255 in the Eastern District of California, the court in which he was convicted

and sentenced, is inadequate or ineffective.   Although it appears that relief under §

2255 no longer is available because Applicant has completed his criminal sentence, his

failure to seek such relief when it was available does not render that remedy inadequate

or ineffective or otherwise entitle him to some other form of collateral relief.   *See United

States v. Lester*, 615 F. App'x 507, 508 (10th Cir. 2015) (rejecting petition for *coram

nobis* relief because relief under § 2255 was available when petitioner was in custody).

Therefore, the ineffective assistance of counsel claim challenging the validity of

Applicant's conviction will be dismissed for lack of jurisdiction.

## II.   Claims Challenging Removal Proceedings and Order

The Court next will address Applicant's claims challenging the removal

proceedings and the resulting order of removal in which he argues the immigration

judge and the BIA failed to inform him he was eligible to seek a waiver of inadmissibility

and that counsel was ineffective during the removal proceedings.   Although not

asserted as a separate claim for relief, the Court notes that part of the relief Applicant

seeks is termination of the removal proceedings because the original Notice to Appear

7

allegedly was defective.   Therefore, to the extent Applicant may be asserting a claim premised on the adequacy of the Notice to Appear, that claim also will be included in this section.

The record before the Court does not reflect whether Applicant is raising any of these claims in the Petition for Review that is pending in the Ninth Circuit.   Regardless, the Court agrees with Respondent that this Court lacks jurisdiction to consider the claims in this action.

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."   *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541 (1986). Pertinent to Applicant's claims challenging the removal order, "[t]he REAL ID Act expressly divests district courts of jurisdiction over habeas challenges to removal orders, including those arising from criminal offenses, and funnels all such challenges to the appropriate court of appeals as the sole and exclusive means for judicial review of an order of removal."   *Thoung v. United States,* 913 F.3d 999, 1003 (10th Cir. 2019); *see also Gonzalez-Alarcon v. Macias,* 884 F.3d 1266, 1278 (10th Cir. 2018) ("Congress clearly intended to funnel all challenges to removal through the petition for review process.").   Therefore, the Court lacks jurisdiction in this habeas corpus action to consider Applicant's claims challenging the removal proceedings and the resulting order of removal.

## III.    Statutory Claim

The Court next will address Applicant's claim that he has a statutory right to a

custody redetermination hearing because he is being held pursuant to 8 U.S.C. §
1226(a) rather than 8 U.S.C. § 1226(c).   Consideration of this claim requires some
background discussion of the statutory authority to detain aliens.

In general, detention of aliens within the United States is governed by 8 U.S.C. §
1226 and 8 U.S.C. § 1231.   Section 1226 grants authority to detain aliens prior to entry
of a final order of removal and § 1231 authorizes detention during the removal period
that commences after entry of a final order of removal.   The removal period begins on
the latest of the following dates:

> (i) The date the order of removal becomes administratively
> final.
>
> (ii) If the removal order is judicially reviewed and if a court
> orders a stay of the removal of the alien, the date of the
> court's final order.
>
> (iii) If the alien is detained or confined (except under an
> immigration process), the date the alien is released from
> detention or confinement.

8 U.S.C. § 1231(a)(1)(B).   As noted above, Applicant filed a Petition for Review of the
removal order and the Ninth Circuit has granted a stay of removal.   Therefore, pursuant
to § 1231(a)(1)(B)(ii), Applicant's removal order is not final, and the removal period has
not commenced.   As a result, Applicant's detention is governed by § 1226.

Section 1226(a) generally grants the Attorney General discretion to arrest and
detain an alien pending a decision on whether the alien should be removed.   However,
§ 1226(c) *requires* detention of certain aliens, including aliens who are "deportable by
reason of having committed any offense covered in [8 U.S.C. § 1227(a)(2)(A)(iii)]."   8
U.S.C. § 1226(c)(1)(B).   Title 8 U.S.C. § 1227(a)(2)(A)(iii) states that "[a]ny alien who is

convicted of an aggravated felony at any time after admission is deportable."

Applicant's conviction for mail and wire fraud involving a net loss greater than $2 million dollars is an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(M)(i) (defining "aggravated felony" to include offenses that involve "fraud or deceit in which the loss to the victim or victims exceeds $10,000"). Therefore, his detention pending a removal decision is governed by § 1226(c). Applicant does not contend that the sole exception to mandatory detention under § 1226(c), which is found in § 1226(c)(2) and relates to witness protection, is applicable. As a result, his detention is mandatory. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018) ("We hold that § 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes.").

Because it is clear that Applicant is being detained pursuant to § 1226(c), his claim that he is entitled to a custody redetermination hearing *under § 1226(a)* fails. Furthermore, to the extent Applicant may be asserting a claim that he has a statutory right to a custody redetermination hearing under § 1226(c), that claim lacks merit. After *Jennings*, it is clear that there is no statutory right to a bond hearing or any sort of custody redetermination hearing under § 1226(c). *See Jennings*, 138 S. Ct. at 846, 850-51 (rejecting arguments that § 1226(c) should be interpreted to include an implicit 6-month time limit on the length of mandatory detention and that aliens detained under § 1226(c) must be given periodic bond hearings).

Applicant apparently concedes that he originally was detained under the authority

of § 1226(c).   However, relying on the pre-*Jennings* decision in *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), he contends that an alien who previously was not eligible for a custody hearing under § 1226(c) becomes eligible for a custody hearing under § 1226(a) if they are detained pending judicial review of the immigration proceedings.   In *Casas-Castrillon*, the Ninth Circuit considered the statutory authority to detain an alien subject to a final order of removal who had been held for seven years while he repeatedly sought judicial relief from the order of removal and stays of removal.   The Ninth Circuit first determined that, because § 1226(c) applies only during removal proceedings that end upon conclusion of administrative proceedings before the BIA, § 1226(c) does not govern the prolonged detention of aliens awaiting judicial review of their removal orders.   *Id.* at 947-48.   Instead, detention during the judicial review period was authorized "under the Attorney General's general, discretionary authority under § 1226(a), [which] authorizes the Attorney General to detain an alien 'pending a decision on whether the alien is to be removed from the United States.'"   *Id.* at 948.   Thus, "[o]nce Casas' proceedings before the BIA were complete, the Attorney General's authority to detain him under § 1226(c) ended and that authority shifted instead to § 1226(a)."   *Id.*   The Ninth Circuit further concluded that, "[b]ecause the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally doubtful,' we hold that § 1226(a) must be construed as requiring the Attorney General to provide the alien with such a hearing."   *Id.* at 951.

The Court is not bound by the Ninth Circuit's determination in *Casas-Castrillon*

that the statutory authority for an alien's detention shifts to § 1226(a) if the alien seeks judicial review of the order of removal.   Furthermore, the Court need not address that particular issue because Applicant's reliance on *Casas-Castrillon's* holding that a bond hearing is required is misplaced in light of the Supreme Court's decision in *Jennings*. In *Jennings*, the Supreme Court considered the Ninth Circuit's use of the canon of constitutional avoidance to construe certain immigration statutes, including § 1226(a), "to limit the permissible length of an alien's detention without a bond hearing."   *Id.* at 842.   In the case of § 1226(a), the Ninth Circuit had "ordered the Government to provide procedural protections that go well beyond the initial bond hearing established by existing regulations – namely, periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary."   *Id.* at 847.   The Supreme Court rejected the use of the canon of constitutional avoidance to reach this result because § 1226(a) is clear.

> Nothing in § 1226(a)'s text – which says only that the Attorney General "may release" the alien "on . . . bond" – even remotely supports the imposition of either of those requirements.   Nor does § 1226(a)'s text even hint that the length of detention prior to a bond hearing must specifically be considered in determining whether the alien should be released.

*Id.* at 847-48.

It is clear that the Ninth Circuit's use of the canon of constitutional avoidance in *Casas-Castrillon* to construe § 1226(a) as requiring the Attorney General to provide a bond hearing to an alien detained for a prolonged period is no longer good law.   *See Pensamiento v. McDonald*, 315 F. Supp.3d 684, 691 n.4 (D. Mass. 2018).   Therefore,

Applicant is not entitled to relief on this statutory claim.

### IV.   Claim Challenging Adequacy of Bond Hearing

The Court next will address Applicant's due process claim challenging the September 2017 bond hearing.   Applicant asserts, without supporting factual allegations, that the immigration judge was not a neutral decision-maker, that he did not receive an individualized assessment, and that there was no clear and convincing evidence to support the denial of bond.   The record reflects that the immigration judge denied Applicant bond based on a determination that he was a danger to property and a flight risk.   (*See* ECF No. 24-1 at Attach. 3.)   The BIA agreed with the immigration judge that clear and convincing evidence demonstrated Applicant poses a danger to property.   (*See* ECF No. 24-1 at Attach. 2.)   According to Applicant, the immigration judge failed "to consider all the evidence in assessing petitioner's present dangerousness" (ECF No. 25 at p.19), and he specifically points to the fact that he was not detained in his criminal case prior to entering a guilty plea.   Applicant also contends that he has no history of violent conduct, he has maintained a consistent record of institutional compliance, and he has accepted full responsibility for his criminal conduct.

Applicant's claim challenging the September 2017 bond hearing lacks merit for three reasons.   First, as discussed above, Applicant concedes he properly was detained pursuant to § 1226(c) prior to seeking judicial review of the removal order, which means there is no dispute that he was being detained under § 1226(c) in September 2017.   Under § 1226(c), there is no statutory requirement for a bond hearing or a custody redetermination hearing.   *Jennings*, 138 S. Ct. at 846, 850-51

(rejecting argument that aliens detained under § 1226(c) must be given periodic bond hearings).   As a result, any claim challenging the adequacy of the September 2017 hearing to which Applicant was not entitled must be rejected.

Second, even if the Court assumes Applicant was entitled to a bond hearing in September 2017, Applicant's claim challenging the adequacy of that hearing must be dismissed for lack of jurisdiction.   "The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review [and] [n]o court may set aside any action or decision by the Attorney General under [§ 1226] regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e).   In other words, "Congress has specifically eliminated [Applicant's] attempted means of review – a habeas petition pursuant to § 2241 – as a way of challenging the Attorney General's discretionary decision" regarding bond.   *Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012).

Applicant seeks to avoid this result by arguing that he is not challenging a discretionary decision and, instead, he is asserting a claim that the discretionary process itself was constitutionally flawed.   It is true that the Court could exercise jurisdiction over a claim challenging the statutory framework permitting detention without bond rather than a particular bond decision.   *See Demore v. Kim*, 538 U.S. 510, 517 (2003).   However, the Court is not persuaded by Applicant's argument because, despite his attempt to characterize his claim otherwise, he clearly is challenging a particular bond decision when he asserts that the immigration judge was not a neutral decision-maker, he did not receive an individualized assessment, and there was no

clear and convincing evidence to support the denial of bond.   These are precisely the sort of arguments the Court lacks jurisdiction to consider.   *See Mwangi*, 465 F. App'x at 787.

Third, assuming again that Applicant was entitled to a bond hearing and that the Court could consider his claims challenging the adequacy of that particular bond hearing, the claim still must be dismissed because Applicant fails to allege specific facts that demonstrate his right to due process was violated.   As noted above, Applicant makes only conclusory assertions that the immigration judge was not a neutral decision-maker, that he did not receive an individualized assessment, and that there was no clear and convincing evidence to support the denial of bond.   He does not identify the particular evidence the immigration judge allegedly failed to consider and his disagreement with the result is not sufficient to demonstrate a constitutional violation.

## V.   Claim Challenging February 2019 Decision to Continue Detention

The Court next will address Applicant's due process claim challenging the February 8, 2019 Decision to Continue Detention.   As noted above, on February 8, 2019, immigration officials issued a Decision to Continue Detention, informing Applicant "that your custody status has been reviewed and it has been determined that you will not be released from the custody of [ICE] at this time" because "[t]here is a significant likelihood of removal in the reasonably foreseeable future."   (ECF No. 25 at p.45.) Applicant contends this determination is flawed because immigration officials failed to comply with their own regulations in making the determination.   Although not entirely clear, the February 2019 custody determination apparently was prompted by the

conclusion of Applicant's administrative removal proceedings and relates to detention during the removal period under 8 U.S.C. § 1231.

This claim lacks merit because, for the reasons discussed above, the Ninth Circuit has stayed the removal order, which means the removal period has not commenced. *See* 8 U.S.C. § 1231(a)(1)(B)(ii). As a result, any claim challenging the Decision to Continue Detention is not ripe for review. In any event, even assuming the claim were ripe, Applicant's assertion that immigration officials failed to comply with their own regulations does not demonstrate his constitutional right to due process has been violated. "[A] failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson,* 1 F.3d 1063, 1068 n.4 (10th Cir.1993) (citing *Davis v. Scherer,* 468 U.S. 183, 194 (1984)).

## VI.    Claim Challenging Prolonged Detention

Finally, Applicant claims his prolonged detention without a custody redetermination hearing violates his constitutional rights. (*See* ECF No. 8-1.) Applicant concedes he had a bond hearing on September 18, 2017. However, he contends that "since then no neutral decision-maker – whether a federal judge or an immigration judge – has conducted a hearing to redetermine whether this lengthy incar[cer]ation is warranted based on danger or flight risk, the only two permissible bases for immigration detention prior to entry of an executable removal order." (ECF No. 8-1 at p.2.) According to Applicant, "at a minimum, due process requires a bond hearing after detention has become unreasonably prolonged." (ECF No. 25 at p.30.) The Court has jurisdiction under 28 U.S.C. § 2241 to consider Applicant's "constitutional

challenge to the legislation authorizing his detention without bail" in § 1226(c).
*Demore*, 538 U.S. at 517.

Applicant primarily contends his prolonged detention is unconstitutional in
violation of due process, but he also refers to the Eighth Amendment's Excessive Bail
Clause.   However, Applicant presents no reasoned argument or analysis pertinent to
the Eighth Amendment.   Therefore, the Court considers only whether Applicant's
prolonged detention violates due process.

"It is well established that the Fifth Amendment entitles aliens to due process of
law in deportation proceedings."   *Id.* at 523 (internal quotation marks omitted).   It is
equally clear that "[d]etention during removal proceedings is a constitutionally
permissible part of that process."   *Id.* at 531.   In *Demore*, the Supreme Court rejected
a due process claim brought by an alien who conceded he was deportable and had
been detained approximately six months.   *Id.*   The Supreme Court distinguished
*Zadvydas v. Davis*, 533 U.S. 678 (2001), which held that the Due Process Clause limits
detention during the removal period to a presumptive six-month period, in part because
*Zadvydas* involved indefinite and potentially permanent detention under § 1231 during
the removal period rather than pre-removal detention under § 1226(c), which has a
definite termination point.   *Id.* at 528-29.   The Supreme Court also noted that,
according to the Executive Office for Immigration Review, detention under § 1226(c) in
most cases lasted an average of forty-seven days and, in the remaining cases involving
an appeal to the BIA, detention lasted an average of four months.   *Id.* at 529.

Applicant's circumstances are significantly different.   He continues to challenge

the removal order and he has been detained significantly longer than either the detainee in *Demore* or the average length of detention discussed in *Demore*.   Applicant is not, however, being detained pursuant to § 1231.   Therefore, to the extent he relies on *Zadvydas* in support of his constitutional claim, the Court finds that decision is not applicable.

Respondent concedes that "[n]either *Demore* nor *Jennings* addresses the point at which a bond hearing may become required by due process concerns" in a particular case.   (ECF No. 24 at p.9.)   The Court assumes that due process does, at some point, require a custody redetermination hearing for a detainee like Applicant who is subject to mandatory detention under § 1226(c) and who has had a custody hearing in the past. *Cf. Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 280 (3d Cir. 2018) (recognizing in the context of § 1226(a) the concern that detention might become unreasonably prolonged in violation of due process following an initial bond hearing). The question then becomes what factors should the Court consider to determine when pre-removal detention is unconstitutionally prolonged?

The parties have not identified any authority from the Supreme Court or the Tenth Circuit to answer this question and the Court's own research has uncovered none.   However, courts across the country that have considered this issue generally look to the particular facts of the case to determine whether detention is unduly prolonged.   *See id.* at 278 (recognizing prior holdings that "due process entitles § 1226(c) detainees to a bond hearing at some point, with the exact time varying with the facts of the case").

The most important factors in addressing "as-applied" challenges post-*Jennings* are the length of detention and the reason for the prolonged detention. *See, e.g., Dryden v. Green*, 321 F. Supp.3d 496, 502 (D.N.J. 2018).   Some courts have found detention exceeding one year without a bond hearing to implicate due process concerns. *See De Oliveira Viegas v. Green*, 370 F. Supp.3d 443 (D.N.J. 2019) ("As a general matter, courts in [the District of New Jersey] have found detention for a year, or just over a year, insufficient to support an as-applied challenge to a § 1226(c) detention post-*Jennings*[;] [l]onger periods of detention without a bond hearing, however, have been found to violate due process."); *see also Muse v. Sessions*, No. 18-CV-0054 (PJS/LIB), 2018 WL 4466052 (D. Minn. Sept. 18, 2018) ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.").   Additional factors that some courts have found relevant include whether any impediments exist to final removal if ordered, whether the alien's immigration detention is longer than the term of imprisonment served by the alien, whether the facility for civil immigration detention is meaningfully different from a penal institution for criminal detention, and the foreseeability of immigration proceedings concluding in the near future. *See Misquitta v. Warden Pine Prairie ICE Processing Ctr.*, 353 F. Supp.3d 518, 524-25 (W.D. La. 2018) (collecting cases).

Importantly, the Court considers the relevant factors in each particular case in light of the statutory purpose. *See id.* at 526 (consideration of the relevant factors "must be tied back to the ultimate question for the court: has prolonged detention become unreasonable, unjustified, or arbitrary in light of the purpose of section

19

1226(c)?")   The purpose of mandatory detention under § 1226(c) is to prevent "deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 528.

With respect to the length of detention, Applicant has been detained since March 2017, or approximately twenty-eight months to date.   He did have a bond hearing in September 2017 and has been detained for only approximately twenty-two months since the bond hearing.   Of course, the period of detention since the bond hearing is now approaching two years, a length of time that raises significant concerns.   Citing *Borbot*, Respondent contends that the duration of Applicant's detention is not enough, by itself, to sustain a due process challenge.   Nevertheless, the Court finds that the duration of Applicant's detention weighs in his favor in finding a due process violation.

The second critical factor to consider is the reason for the prolonged detention. Applicant does not dispute that he requested numerous continuances and extensions of time in the administrative proceedings prior to entry of the removal order.   He also does not dispute that he has sought judicial review of the removal order in the Ninth Circuit as well as a stay of removal.   Although he contends the requests were justified and not sought in bad faith or for an improper purpose, that does not change the fact that, with one exception when the November 15, 2017 request for a continuance was a joint request, it was Applicant, not the government, who has sought and obtained continuances, extensions of time, judicial review, and a stay of removal.   Although Applicant should not be punished for seeking administrative and judicial review as is his

right, delays resulting from Applicant's actions do not demonstrate his continued detention is unreasonable or unjustified.   *See Sigal v. Searls*, No. 18-CV-00389 EAW, 2018 WL 5831326 at *6 (W.D.N.Y. Nov. 7, 2018) ("Petitioner's continued detention is attributable to his decision to appeal the IJ's removal order and to seek a stay of his removal in connection therewith.").   There is no evidence of any bad faith by the government.   Therefore, this factor weighs against Applicant.

The other factors identified above are mixed.   The record before the Court does not indicate the existence of any impediments to final removal if ordered and Applicant's immigration detention is much shorter than his fifty-seven-month prison sentence. These factors weigh against Applicant.   There is no evidence before me that would allow assessment of conditions in any immigration detention center versus a penal institution.   *See Muse*, 2018 WL 4466052 at *5 (weighing facility conditions in detainee's favor because he was housed in a county jail alongside inmates serving criminal sentences).

The Ninth Circuit only recently appointed pro bono counsel to represent him in his Petition for Review.   Thus, it seems unlikely that the immigration proceedings will conclude in the immediate future.   *See East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1230 (9th Cir. 2018) (stating that immigration courts have a "total backlog of nearly 800,000 removal cases").   At the same time, however, Applicant's detention is not indefinite and will end at some point.   *Cf. Mwangi*, 465 F. App'x at 787 ("Although a precise end-date to his removal cannot be pinpointed, that is because his removal proceedings continue, not because the government cannot remove him."); *Sigal*, 2018

WL 5831326 at *6 ("Petitioner's detention will come to an end, one way or another, upon the disposition of his appeal.").

Ultimately, the Court concludes that Applicant's detention has not become unreasonable, unjustified, or arbitrary in violation of due process.   The Court reiterates that the purpose of mandatory detention under § 1226(c) is to prevent "deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."   *Demore*, 538 U.S. at 528.   There is no evidence or indication that Applicant is being detained for some other purpose.   Moreover, it is undisputed that Applicant has, in fact, received a bond hearing during his detention.   Thus, even though Applicant has been detained for nearly two years since the bond hearing, this is not a case in which Applicant is being held without any process.   *See Calmo v. Sessions*, No. C 17-07124 WHA, 2018 WL 2938628 at *5 (N.D. Cal. June 12, 2018) (denying habeas relief where alien detained for 28 months under § 1226(c) had a constitutionally-adequate bond hearing and de novo review by the BIA during that time); *Sigal*, 2018 WL 5831326 at *7 (concluding that the petitioner's detention for sixteen months under § 1226(c) did not violate due process, in part because the petitioner had received an individualized review of his detention).

Finally, the cases Applicant cites in which criminal aliens asserting due process claims challenging prolonged detention have been granted relief are distinguishable because of different factual circumstances.   *See Lett v. Decker*, 346 F. Supp.3d 379 (S.D.N.Y. Oct. 10, 2018), *appeal filed*, No. 18-3714 (2d Cir. Dec. 12, 2018) (delays attributable to the immigration court); *Brissett v. Decker*, 324 F. Supp.3d 444 (S.D.N.Y.

2018) (detainee not responsible for delays); *Dukuray v. Decker*, 2018 WL 5292130

(S.D.N.Y. Oct. 25, 2018) (delay attributable to immigration court); *Hernandez v. Decker*,

No. 18-CV-5026 (ALC), 2018 WL 3579108 (S.D.N.Y. July 25, 2018) (delay attributable

to government); *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497 (S.D.N.Y.

Aug. 20, 2018) (delay caused by government); *Sajous v. Decker*, No. 18-CV-2447

(AJN), 2018 WL 2357266 (S.D.N.Y. May 23, 2018) (delay caused by government).   In

this case, since his detention, Applicant (or his counsel) have sought nine continuances

of various proceedings and one request for extension of time to file a brief (with a

second request for extension being denied).   The continuances added more than a

year to the duration of the removal proceedings.   The government cannot be faulted for

the extended time Applicant has spent in detention while he has sought continuances to

litigate the validity of the removal order.

## CONCLUSION

In summary, the Court finds that Applicant is not entitled to relief in this habeas

corpus action and the Application will be denied.   Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2241 (ECF No. 8) is denied and this case is dismissed without prejudice for

lack of jurisdiction.

DATED July 24, 2019.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge